UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDDIE MATEUS,

                    Movant,

          -v.-

UNITED STATES OF AMERICA,

                    Respondent.

18 Civ. 638 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge[1]:

Movant Eddie Mateus brings this motion pursuant to 28 U.S.C. § 2255 to withdraw his guilty plea and/or to vacate, set aside, or correct his sentence. On June 13, 2016, on the eve of his trial, Mateus pleaded guilty to one count of conspiring to distribute, and to possess with the intent to distribute, one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). This Court sentenced Mateus principally to a term of 120 months' imprisonment, the statutory mandatory minimum. In his § 2255 motion, Mateus argues that the attorney who represented him at his guilty plea and sentencing, Kyle Watters,[2] provided ineffective assistance of counsel, because Watters failed to: (i) advise Mateus to accept an earlier, more generous plea

---

[1]    The Clerk of Court is directed to modify the caption as reflected above.

[2]    In a single instance in his brief, Mateus claims that Attorney Watters's co-counsel, Nichelle Johnson, also provided him with ineffective assistance of counsel. (Mateus Br. 5). Reading his moving papers as a whole, the Court understands that Mateus's allegations of ineffective assistance of counsel are made against Watters principally. The Court's analysis of Mateus's § 2255 motion would not be altered were it to interpret the motion as alleging that both Watters and Johnson provided ineffective assistance.

offer made by the Government; (ii) challenge a two-level firearm enhancement in the plea agreement and at sentencing; and (iii) make a timely motion to dismiss the indictment.[3]  Because Mateus has failed to show that his attorney provided ineffective assistance of counsel that prejudiced Mateus, his § 2255 motion is denied.

**BACKGROUND**[4]

### A.    Factual Background

From 2011 through at least November 2012, Mateus purchased kilogram quantities of cocaine and heroin from sources in New York City, Mexico, and Colombia.  (PSR ¶ 10).  Mateus then resold the drugs to individuals in the New

---

[3]    Mateus also includes a single sentence claiming that his trial counsel was ineffective for failing to request a sentencing hearing pursuant to *United States* v. *Fatico*, 603 F.2d 1053, 1057 & n.9 (2d Cir. 1979).  (Mateus Br. 5).  Mateus does not present any arguments as to what information a *Fatico* hearing might have produced or how it would have benefitted him.  He merely states that, at a *Fatico* hearing, he could have countered "the firearm enhancement and the drug quantities alleged." (Dkt. #123 at 3).  But Mateus had already stipulated to a co-conspirator possessing a firearm and to the facts that the offense involved approximately nine kilograms of heroin and approximately two kilograms of cocaine.  (PSR ¶ 5).  And the record at sentencing substantiated these stipulations.  Thus, a *Fatico* hearing could not have aided Mateus in these respects.  Mateus's conclusory reference to a *Fatico* hearing cannot support a claim of ineffective assistance of counsel.  *See United States* v. *Costa*, 423 F. App'x 5, 9 (2d Cir. 2011) (summary order) ("[I]n the absence of what evidence, if any, a *Fatico* hearing might have established, [the Court] cannot conclude that counsel's failure to request one prejudiced [movant] in any way."); *Flores-Mendez* v. *United States*, No. 17 Civ. 2767 (KBF), 2018 WL 357311, at *3 (S.D.N.Y. Jan. 10, 2018) (explaining that "without evidence of what a *Fatico* hearing might have established, petitioner cannot demonstrate that his attorney's actions were deficient or unreasonable").

[4]    All docket entries in this Opinion refer to the docket for *United States* v. *Eddie Mateus*, No. 14 Cr. 504-1 (KPF).  For ease of reference, the Court refers to the parties' briefing as follows: Mateus's Memorandum of Law in Support of His § 2255 Motion as "Mateus Br." (Dkt. #115); the Government's Memorandum of Law in Opposition to Mateus's § 2255 Motion as "Gov. Opp." (Dkt. #122); and Mateus's Memorandum of Law in Further Support of His § 2255 Motion as "Mateus Reply" (Dkt. #126).  The Court refers to affidavits related to this motion by the name of the affiant and the date of the affidavit, e.g., "[Name] [Date] Aff."  In addition, the Court refers to Mateus's Presentence Investigation Report, which is maintained in a restricted format at docket entry #103, as "PSR."

York City area.  (*Id.*).  On November 15, 2012, Mateus delivered approximately $85,000 to an individual he believed to be a member of a narcotics cartel, but who was actually a confidential source working for the U.S. Drug Enforcement Administration (the "DEA").  (*Id.*).  Two days later, DEA agents stopped Mateus and a co-conspirator ("CC-1") as they were exiting CC-1's apartment in Yonkers, New York.  (*Id.*).  CC-1 was carrying a bag containing approximately 500 grams of heroin that belonged to Mateus.  (*Id.*).  A subsequent search of CC-1's apartment yielded, among other items, a heroin press, a loaded firearm, and various narcotics paraphernalia and packaging materials.  (*Id.*).

Both Mateus and CC-1 were arrested.  Mateus was initially released from custody.  (PSR ¶ 10).  Law enforcement later learned that CC-1 was Mateus's primary customer; Mateus located and maintained relationships with drug suppliers in Colombia and Mexico, paid for and received narcotics from those suppliers, and sold the drugs to CC-1, who then cut, packaged, and resold them.  (*Id.* at ¶ 11).

## B.    Procedural Background

### 1.    The Indictment, Arrest, and Motion Practice

On July 29, 2014, a Grand Jury returned an indictment charging Mateus with conspiring to distribute, and to possess with the intent to distribute, five kilograms or more of cocaine, and one kilogram or more of heroin, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and 846.  (Dkt. #2 (the "Indictment")).  Mateus was arrested on August 4, 2014 (Dkt. #4), and was

arraigned before this Court on August 5, 2014 (Minute Entry for August 5, 2014), at which time he entered a plea of not guilty.

On January 15, 2015, the Court ordered the parties to notify the Court on or before February 17, 2015, whether any motions would be filed. (Minute Entry for January 15, 2015). On February 17, 2015, the parties stated that Mateus intended to file motions: (i) to suppress evidence; and (ii) for a bill of particulars. (Dkt. #29). The Court ordered that these motions be filed on or before March 23, 2015. (*Id.*).

On March 23, 2015, Mateus — who was at the time represented by attorneys Raymond Aab and Gerald McMahon — filed a motion seeking to suppress certain evidence and for a bill of particulars. (Dkt. #30, 31, 32). On September 2, 2015, Mateus retained new counsel, Kyle B. Watters. (Dkt. #52). The Court allowed Watters to supplement the motion filed by Mateus's previous counsel. (Dkt. #57 at 6 (transcript of September 10, 2015 proceeding)). On September 28, 2015, Watters filed a letter supplementing Mateus's prior counsel's motion and asking for a *Franks* hearing regarding the motion to suppress. (Dkt. #56). *See generally Franks* v. *Delaware*, 438 U.S. 154, 155-56, 170-71 (1978) (holding that the Fourth Amendment entitles a defendant to a hearing concerning the validity of a warrant if he makes (i) a "'substantial preliminary showing' that a deliberate falsehood or statement made with reckless disregard for the truth was included in the warrant affidavit" and (ii) "the statement was necessary to the judge's finding of probable cause").

The Court had scheduled a hearing on Mateus's motion to suppress for February 10, 2016. (Dkt. #69). However, the hearing was mooted by the Government's decision not to make use of the evidence in question at trial. (Dkt. #72). Accordingly, by Order dated February 4, 2016, the Court indicated that the February 10 proceeding would be a status conference only. (*Id.*).

Two days before the status conference, and months after the deadline for filing motions had expired, Watters filed another letter motion, this one seeking dismissal of the Indictment based on: (i) alleged misconduct by a then-cooperating witness ("CW-3") in making recordings of Mateus (specifically, encouraging Mateus to become intoxicated and supplying him with cocaine); and (ii) allegedly false testimony by CW-3 before the Grand Jury regarding his dealings with Mateus. (Dkt. #74).

The Court addressed Mateus's motion to dismiss the Indictment at the conference on February 10, 2016. (Dkt. #77 (transcript of February 10, 2016 proceeding)). Initially, the Court indicated its intent to deny the motion to dismiss the Indictment because it was untimely. (*Id.* at 11:14-15:4, 29:3-4). Later, however, the Court determined to address the merits of the motion, concluding that the alleged misconduct of CW-3 was not so "pervasive and severe" that it "poisoned the government's investigation [such] that the very, very severe sanction of dismissal of the indictment" was warranted. (*Id.* at 29:8-12). The Court stated that, though the motion was being "denied as untimely . . . I wouldn't have granted it on the merits either." (*Id.* at 29:21-23).

The Court then denied Mateus's remaining motion for a bill of particulars and scheduled trial to begin on June 20, 2016. (*Id.* at 29:24-30:15; Dkt. #76).

### 2. The Plea Agreement and Guilty Plea

Mateus claims that the Government tendered an unofficial plea offer (the "Unofficial Plea Offer") on or about May 1, 2016, which offer would have allowed him to plead guilty to a lesser included conspiracy offense with the penalty specified by 21 U.S.C. § 841(b)(1)(B), one which carried a mandatory minimum sentence of 60 months' imprisonment. (Mateus Br. 22-23; Watters Nov. 4, 2016 Aff. ¶¶ 2-10; Watters Mar. 21, 2018 Aff. 1-2). When Mateus's counsel reached out to the Government to discuss the Unofficial Plea Offer on or around May 18, 2016, the Government stated that the offer was no longer available, and, further, that the Government would only accept a guilty plea to a conspiracy offense with the penalty specified by 21 U.S.C. § 841(b)(1)(A), which had a mandatory minimum of 120 months' imprisonment. (Mateus Br. 23; Dkt. #123 at ¶ 5)

The Court and the parties thus prepared for trial. On May 31, 2016, the Grand Jury returned a Superseding Indictment, which expanded the timeframe of the conspiracy by four months and changed the overt acts alleged in the previous Indictment. (Dkt. #91). One week prior to trial, on June 13, 2016, Mateus pleaded guilty to Count One of the Superseding Indictment pursuant to a plea agreement with the Government (the "Plea Agreement"); Count One charged Mateus with conspiring to distribute, and to possess with the intent to distribute, one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846

and 841(b)(1)(A), and 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).  (PSR ¶ 5).  Under the terms of the Plea Agreement, the parties stipulated to a range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") of 135 to 168 months' imprisonment, with a mandatory minimum term of 120 months' imprisonment (the "Stipulated Guidelines Range").  (*Id.*).  The Stipulated Guidelines Range was based on the parties' agreement that the offense involved approximately nine kilograms of heroin and approximately two kilograms of cocaine.  (*Id.*).  The Plea Agreement also included the parties' stipulation to a two-level enhancement because a firearm had been possessed in furtherance of the narcotics offense.  (*Id.* (citing U.S.S.G. § 2D1.1(b)(1))).[5]

During the plea proceeding, and after placing the defendant under oath, the Court confirmed that Mateus had signed the Plea Agreement, and that before doing so, Mateus had read it, discussed it with his attorney, and fully understood its terms.  (Dkt. #97 at 21-22 (transcript of June 13, 2016 proceeding)).  The Court directed Mateus's attention to the Guidelines stipulations in the Plea Agreement, and confirmed that Mateus understood that, while the parties were bound by the stipulations (including the Stipulated Guidelines Range), the Court was not.  (*Id.* at 22).  In addition, the Court ensured that Mateus understood that, by pleading guilty pursuant to the Plea Agreement, he was waiving the right to appeal any sentence at or below 168

---

[5]     The Probation Office later determined that the Plea Agreement had erroneously calculated Mateus's criminal history score and concluded that the appropriate Guidelines range was 121 and 151 months' imprisonment.  (PSR at 19).

months' imprisonment. (*Id.* at 24-25). Mateus confirmed that he understood the waiver provision and proceeded to plead guilty. (*Id.* at 29-30).

### 3. The Sentencing

On January 17, 2017, Mateus appeared before the Court to be sentenced. (Dkt. #112; Dkt. #113 (transcript of January 17, 2017 proceedings)). The Court heard from the Government, counsel for Mateus, and Mateus himself. Mateus's counsel asked the Court to impose the mandatory minimum sentence of 120 months' imprisonment. (Dkt. #104). Counsel argued that this sentence would serve the interests of justice in light of, among other things: (i) Mateus's acceptance of responsibility for his conduct; (ii) Mateus's relative culpability as compared to his co-conspirators; and (iii) the fact that, while a co-conspirator ("CW-1") had possessed a gun in furtherance of the narcotics trafficking conspiracy, Mateus had denied ever himself possessing a firearm. (Dkt. #113 at 19-23).

Mateus then spoke directly to the Court. While reciting that he took full responsibility for participating in the narcotics conspiracy, Mateus disputed certain key aspects of the Government's account of the evidence against him. (Dkt. #113 at 24-31). Mateus also stated that he regretted not accepting the Unofficial Plea Offer made by the Government, which offer would have entailed a lower mandatory minimum sentence. (*Id.*).

The Court sentenced Mateus principally to a term of 120 months' imprisonment. (Dkt. #113 at 36). This sentence, which was below both the Stipulated Guidelines Range of 135 to 168 months' imprisonment and the

Court-calculated Guidelines range of 121 to 151 months' imprisonment, was the mandatory minimum sentence for the crime to which Mateus had pleaded guilty. The Court detailed the factors it had considered in arriving at that term of imprisonment, including all of those contained within 18 U.S.C. § 3553(a), citing in particular Mateus's support within his community, his struggles with addiction, and his countervailing reluctance to take full responsibility for the scope of his criminal conduct. (*Id.* at 36-40).

Neither Mateus nor the Government appealed from his conviction or sentence.[6]

### 4.    The § 2255 Motion

On January 23, 2018, Mateus, proceeding *pro se*, filed a motion pursuant to 28 U.S.C. § 2255 to vacate his conviction on the grounds that his prior counsel, Kyle Watters, had provided ineffective assistance of counsel. (Dkt. #115). Mateus identified three ways in which his counsel had been allegedly ineffective: (i) failing to advise Mateus to accept the earlier, more generous Unofficial Plea Offer made by the Government; (ii) failing to challenge a two-level firearm enhancement in the Plea Agreement and at sentencing; and (iii) failing to make a timely motion to dismiss the Indictment. (*Id.*).

On January 26, 2018, the Court ordered Attorney Watters to provide an affidavit addressing the allegations of ineffective assistance of counsel. (Dkt.

---

[6]    As noted, Mateus's Plea Agreement with the Government contained a waiver of his right to appeal or collaterally challenge any sentence of imprisonment within or below the parties' Stipulated Guidelines Range. (Dkt. #97 at 24:12-25:14 (transcript of June 13, 2016 proceedings)). There was, however, a carveout to that waiver for claims of ineffective assistance of counsel.

#116).  Mateus provided the requisite waiver of attorney-client privilege on March 1, 2018 (Dkt. #117), and Watters filed an affirmation on March 21, 2018 (Dkt. #118).  The Government filed its brief in opposition to Mateus's § 2255 motion on May 29, 2018.  (Dkt. #122).  Mateus filed a statement in further support of his § 2255 motion on August 29, 2018.  (Dkt. #123).  In consequence, the Court ordered Watters to file a second affidavit in response to Mateus's August 29, 2018 statement (Dkt. #124), which Watters filed on September 26, 2018 (Dkt. #125).  The motion became fully briefed when Mateus filed his reply brief on December 26, 2018.  (Dkt. #126).

## DISCUSSION

### A.    Applicable Law

#### 1.    Motions Under § 2255

Because Mateus is a *pro se* movant, his submission has been evaluated using "less stringent standards than formal pleadings drafted by lawyers." *Ferran* v. *Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993) (internal citation omitted).  The Court has construed Mateus's submissions "liberally and interpret[ed] them to raise the strongest arguments that they suggest." *McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks and citation omitted).

A prisoner in federal custody may seek to have his sentence vacated, set aside, or corrected on the grounds that it "was imposed in violation of the Constitution or laws of the United States, or that the [trial] court was without jurisdiction to impose such sentence, or that the sentence was in excess of the

maximum authorized by law, or is otherwise subject to collateral attack[.]"  28

U.S.C. § 2255(a).  However, the grounds for such a collateral attack under

§ 2255 are more limited than those available on a direct appeal.  *See United*

*States* v. *Addonizio*, 442 U.S. 178, 185 (1979).  Relief may lie "only for a

constitutional error, a lack of jurisdiction in the sentencing court, or an error of

law or fact that constitutes 'a fundamental defect which inherently results in a

complete miscarriage of justice.'"  *United States* v. *Bokun*, 73 F.3d 8, 12 (2d Cir.

1995) (quoting *Hill* v. *United States*, 368 U.S. 424, 428 (1962)); *accord Cuoco* v.

*United States*, 208 F.3d 27, 30 (2d Cir. 2000).

> **2.      Developing the Record in § 2255 Motions**

In ruling on a motion under 28 U.S.C. § 2255, the district court is

required to hold a hearing "[u]nless the motion and the files and records of the

case conclusively show that the prisoner is entitled to no relief."  28 U.S.C.

§ 2255(b); *see also, e.g.*, *Pham* v. *United States*, 317 F.3d 178, 185 (2d Cir.

2003) (noting that 28 U.S.C. § 2255 does not permit summary dismissals of

motions that present facially valid claims).  That said, the filing of a § 2255

motion does not automatically entitle the movant to a hearing, as, for example,

in instances in which a movant's allegations are "vague, conclusory, or

palpably incredible."  *Machibroda* v. *United States*, 368 U.S. 487, 495 (1962).

Rather, it is within the district court's discretion to determine the scope and

nature of a hearing.  *Chang* v. *United States*, 250 F.3d 79, 85-86 (2d Cir. 2001)

("It was, therefore, within the district court's discretion to choose a middle road

that avoided the delay, the needless expenditure of judicial resources, the

burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing."). It is also within the district court's discretion to determine whether to hold a hearing, or to elect to investigate facts outside the record without the personal presence of the movant. *See Machibroda*, 368 U.S. at 495; *see also, e.g.*, *Chang*, 250 F.3d at 85-86 (finding that it was within the district court's discretion to rely on "a detailed affidavit from trial counsel" instead of conducting a full hearing).

To warrant a hearing, the movant "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez* v. *United States*, 722 F.3d 118, 131 (2d Cir. 2013). In this regard, "[t]he procedure for determining whether a hearing is necessary is in part analogous to ... a summary judgment proceeding.... If material facts are in dispute, a hearing should usually be held, and relevant findings of facts made." *Puglisi* v. *United States*, 586 F.3d 209, 213 (2d Cir. 2009). A court need not, however, credit factual assertions contradicted by evidence in the record of the underlying proceeding. *Id.* at 213-14. Moreover, "when the judge who tried the underlying proceedings also presides over a § 2255 motion, a full-blown evidentiary hearing may not be necessary." *Raysor* v. *United States*, 647 F.3d 491, 494 (2d Cir. 2011) (citing *Puglisi*, 586 F.3d at 214-15).[7]

---

[7] Similarly, the filing of a motion does not automatically entitle the movant to discovery. *See* Rule 6(a), Rules Governing Section 2255 Proceedings (stating that a movant is

In determining whether the assertions in a § 2255 motion warrant discovery or a hearing, the court must take into account admissions made by the defendant at his plea hearing, for "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge* v. *Allison*, 431 U.S. 63, 74 (1977). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Id.*

Ultimately, if it "plainly appears" from the motion, exhibits, and record of prior proceedings that the habeas movant is not entitled to relief, "the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings.

### 3. Ineffectiveness Claims on Collateral Review

One potential basis for relief under § 2255 occurs when a defendant has received the ineffective assistance of counsel. A defendant in criminal proceedings has a right under the Sixth Amendment to effective assistance from his attorney at all critical stages in the proceedings, including the entry of a guilty plea, *see, e.g., Hill* v. *Lockhart*, 474 U.S. 52, 58 (1985), and sentencing, *see, e.g., Glover* v. *United States*, 531 U.S. 198, 202-04 (2001).

In order to succeed on a claim of ineffective assistance of counsel, a movant must meet the two-pronged test established by *Strickland* v. *Washington*, 466 U.S. 668 (1984). *First*, the movant must show that his

_____

entitled to undertake discovery only when "the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise").

counsel's representation was deficient, falling below the objective standard of reasonableness. *See id.* at 687-88. During this first step, the standard of review is highly deferential and includes "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The Second Circuit has made clear that an attorney does not provide ineffective assistance by failing to raise frivolous arguments, even where requested by a client. *See, e.g., Weingarten* v. *United States*, 865 F.3d 48, 53 (2d Cir. 2017).

*Second*, the movant must establish that his counsel's errors resulted in actual prejudice. *See Strickland*, 466 U.S. at 694. A movant satisfies this second prong by proving that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* In the specific context of guilty pleas, the prejudice analysis "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. In the context of sentencing, the movant must show that but for counsel's ineffectiveness, there is a reasonable probability that the sentence imposed would have been different. See *United States* v. *Workman*, 110 F.3d 915, 920 (2d Cir. 1997).

A court is not required to conduct a *Strickland* inquiry in any particular order. *See Strickland*, 466 U.S. at 697. If the defendant does not successfully

establish either the performance prong *or* the prejudice prong, the entire claim

fails, and the remaining, unaddressed step becomes moot.  *See id.*

## B.    Mateus's Prior Counsel Did Not Render Ineffective Assistance

### 1.    Counsel's Failure to Convince Mateus to Accept the Government's Unofficial Plea Offer Did Not Constitute Ineffective Assistance

Mateus first claims that his prior counsel, Kyle Watters, was ineffective

in failing to cause Mateus to accept the Unofficial Plea Offer allegedly tendered

by the Government.  (Mateus Br. 22-25).  Mateus claims that this offer was

extended on or around May 1, 2016, and would have allowed him to plead

guilty to a lesser included offense, with penalties specified in 21 U.S.C.

§ 841(b)(1)(B), which in turn would have exposed him to a lower mandatory

minimum term of only 60 months' imprisonment.  (*Id.*).  When Mateus's

counsel reached out to the Government to discuss the Unofficial Plea Offer on

or around May 18, 2016, the Government stated that the offer was no longer

available, and the Government would only accept a plea of guilty to a

conspiracy charge with penalties specified in 21 U.S.C. § 841(b)(1)(A), which

had a mandatory minimum of 120 months' imprisonment.  (*Id.* at 23; Dkt.

#123 at ¶ 5).[8]  Mateus argues that Watters "should have vigorously advised []

Mateus to accept the [Unofficial Plea Offer] … under 21 U.S.C. § 841(b)(1)(B),"

---

[8]    There is some dispute between Mateus and Watters concerning when the Unofficial Plea Offer was made and when the Government stated that the offer was no longer on the table.  (*See* Mateus Reply 1-13).  For purposes of resolving this Motion, the Court accepts as true the timeline that Mateus has proffered.  *See Herzog* v. *United States*, 38 F. App'x 672, 674-76 (2d Cir. 2002) (summary order) (holding that a district court did not abuse its discretion in not holding a hearing when, even if all of the movant's factual allegations were accepted as true, he would not prevail in his ineffective assistance of counsel claim).

in light of: (i) the evidence in Mateus's case; (ii) the fact that a federal grand jury was still empaneled that could return a superseding indictment against Mateus; and (iii) the fact that other defendants in related criminal actions were pleading guilty. (Mateus Br. 23).

As a preliminary matter, Mateus is correct that a defendant is entitled to the effective assistance of counsel in connection with plea negotiations. *See Lafler* v. *Cooper*, 566 U.S. 156, 165 (2012); *Purdy* v. *United States*, 208 F.3d 41, 44-45 (2d Cir. 2000). In this regard, counsel must communicate to the defendant the terms of the plea offer and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed. *Purdy*, 208 F.3d at 45; *see generally Missouri* v. *Frye*, 566 U.S. 134, 144-46 (2012) (stating that defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused); *Davis* v. *Greiner*, 428 F.3d 81, 88 (2d Cir. 2005) ("[C]ounsel has a professional obligation to adequately inform [his] client about the considerations that are relevant to [his] client's decision to accept or deny a plea bargain."); *Pham*, 317 F.3d at 182 (noting that defense attorneys have "a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government"). An attorney's failure to communicate a plea offer to his client, or to provide objectively reasonable advice about the decision to plead guilty, may amount to constitutionally deficient performance. *See, e.g.*, *Cullen* v. *United States*, 194

F.3d 401, 404 (2d Cir. 1999); *United States* v. *Gordon*, 156 F.3d 376, 379-80 (2d Cir. 1998); *Boria* v. *Keane*, 99 F.3d 492, 496-99 (2d Cir. 1996).

"On the other hand, the ultimate decision whether to plead guilty must be made by the defendant." *Purdy*, 208 F.3d at 45 (citing Model Rules of Professional Conduct Rule 1.2(a) (1995) ("In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered....")). "And a lawyer must take care not to coerce a client into either accepting or rejecting a plea offer." *Purdy*, 208 F.3d at 45 (citing *Jones* v. *Murray*, 947 F.2d 1106, 1111 (4th Cir. 1991) ("Various ABA Standards place upon counsel an affirmative duty to avoid exerting undue influence on the accused's decision and to ensure that the decision ... is ultimately made by the defendant." (internal quotations and alterations omitted))).

"Counsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because '[r]epresentation is an art,' and '[t]here are countless ways to provide effective assistance in any given case.'" *Purdy*, 208 F.3d at 45 (quoting *Strickland*, 466 U.S. at 693). "Counsel rendering advice in this critical area may take into account, among other factors, the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea (whether or not accompanied by an agreement with the government), whether the defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision." *Purdy*, 208 F.3d at 45.

Watters's sworn affirmations, the relevant portions of which are not disputed by Mateus, establish that the representation provided to Mateus regarding the Unofficial Plea Offer did not fall below an objective standard of reasonableness. Watters and Mateus had multiple meetings to "review the evidence, discuss the [Unofficial Plea Offer,] and prepare for trial." (Watters Mar. 21, 2018 Aff. 2). Mateus was very actively involved in his case and provided Watters with "voluminous written analysis of the legal issues and evidence involved[.]" (*Id.*). Watters, in turn, provided Mateus with his analysis of the case and advised him that the Unofficial Plea Offer would "expose him to a maximum five-year jail term," while proceeding to trial could expose him to a ten-year mandatory minimum sentence. (*Id.*). Watters advised Mateus to "seriously consider the offer," and encouraged him to accept it to avoid the ten-year mandatory minimum sentence. (*Id.*). Mateus, however was "insistent" that the case be taken to trial, because he believed he could prevail based on his assessment of the Government's evidence against him. (*Id.*). Because Mateus was convinced that he would be found not guilty at trial, he declined the Unofficial Plea Offer. (*Id.* at 3). Watters informed Mateus that this decision to proceed to trial and reject the Unofficial Plea Offer was ultimately Mateus's own choice. (*Id.* at 2-3).[9] Mateus does not contest any of these facts.

---

[9] Watters affirms that Mateus did not change his mind and decide to accept a guilty plea until after it was revealed that the Government had recovered a cellphone that contained sufficient evidence "to prove a drug conspiracy against Mr. Mateus that would expose him to potential jail time well in excess of ten years." (Watters Mar. 21, 2018 Aff. 3). By this point, the Unofficial Plea Offer was no longer available. (*Id.*).

Thus, the Court finds that Watters complied with his obligations as counsel to communicate to Mateus the terms of the Unofficial Plea Offer, to discuss the strengths and weaknesses of the case against him, and to analyze the potential alternative sentences to which Mateus would be exposed if the Unofficial Plea Offer were rejected. *See Purdy*, 208 F.3d at 45. Further, the record establishes that Watters did advise Mateus to accept the Unofficial Plea Offer, but Mateus made an informed choice to proceed to trial based on his belief that he would be found not guilty. The fact that Watters did not attempt to overrule Mateus's wish to proceed to trial and coerce him into accepting the Unofficial Plea Offer does render his legal representation deficient. Indeed, it would have been improper for Watters to attempt to pressure Mateus to enter into a plea agreement against his will. *Purdy*, 208 F.3d at 45. Thus, the Court finds that, even accepting Mateus's allegations as true, Watters's representation of Mateus with regard to the Unofficial Plea Offer does not constitute ineffective assistance.

### 2. Counsel's Failure to Challenge the Gun Enhancement Did Not Constitute Ineffective Assistance

Mateus next argues that Watters provided ineffective assistance of counsel because he encouraged Mateus to plead guilty to the Plea Agreement, which included a two-level firearm enhancement pursuant to U.S.S.G. § 2D1.1(b)(1). (Mateus Br. 5-20). Mateus claims that Watters advised him that the enhancement was applicable to him because another member of the conspiracy, CW-1, had possessed a gun, and Mateus was responsible for the acts of his co-conspirators. (*Id.* at 12-13). According to Mateus, Watters never

19

told him that the enhancement should not apply if Mateus did not know or have reason to foresee that a co-conspirator possessed a weapon in furtherance of the conspiracy.  (*Id.*).  Mateus now claims that he had neither knowledge nor reason to foresee that CW-1 possessed a gun, and thus he should not have been advised by counsel to accept a plea agreement with a firearm enhancement.  (*Id.* at 5-20).  Mateus also argues that his counsel was ineffective in failing to: (i) inform the Court that several of Mateus's co-conspirators had pleaded guilty to plea agreements that did not contain weapons enhancements; and (ii) argue that calculating Mateus's Guidelines range with a two-level enhancement would result in an unwarranted sentencing disparity under 18 U.S.C. § 3553(a)(6).  (*Id.*).

Even if the Court were to accept Mateus's newly-raised claim that he did not know that CW-1 possessed a gun in furtherance of the narcotics conspiracy — a claim undercut by the record before the Court[10] — Watters's representation of Mateus concerning the gun enhancement would not constitute ineffective assistance.  Whether or not the gun enhancement was applied, the crime to which Mateus pleaded guilty carried a mandatory minimum term of imprisonment of 120 months.  21 U.S.C. § 841(b)(1)(A).  And

---

[10]    Among other things, during the plea proceeding, the Court confirmed that Mateus understood the Plea Agreement, which included the two-level firearm enhancement. (PSR ¶ 5; Dkt. #97 at 21-22 (transcript of June 13, 2016 proceeding)).  Further, during sentencing, Watters stated that Mateus was pleading guilty to the enhancement because CW-1 possessed a firearm.  (Dkt. #113 at 19-23 (transcript of January 17, 2017 proceedings)).  Mateus did not challenge this statement.  These statements in open court, which are given a strong presumption of verity, suggest that Mateus was contemporaneously aware that CW-1 possessed a firearm in furtherance of the conspiracy.  *See Blackledge* v. *Allison*, 431 U.S. 63, 74 (1977).

Mateus was ultimately sentenced to this mandatory minimum term. Thus, there can be no reasonable probability that, but for Watters's alleged errors surrounding the gun enhancement, the sentence imposed would have been different. *See Roy* v. *United States*, 347 F. Supp. 3d 230, 237 (S.D.N.Y. 2018) (holding that the second prong of *Strickland* is satisfied in the sentencing context only where the movant has shown that "but for counsel's ineffectiveness, there is a reasonable probability that the sentence imposed would have been different"); *see also Carranza* v. *United States*, No. 10 Civ. 3456 (CM), 2011 WL 1458640, at *4 (S.D.N.Y. Apr. 7, 2011) (finding that a defendant was not prejudiced by his counsel's failure to argue for a sentence below the mandatory minimum, because the sentencing judge was not authorized to impose a sentence below the mandatory minimum). Because Mateus cannot establish that he suffered prejudice under *Strickland*, his second ineffectiveness claim must fail. *Strickland*, 466 U.S. at 697 (concluding that if a movant cannot establish either the performance or the prejudice prong, the entire ineffective assistance of counsel claim fails).

### 3. Counsel's Failure to Bring a Timely Motion to Dismiss the Indictment Did Not Constitute Ineffective Assistance

Finally, Mateus argues that his counsel was ineffective in failing to bring the motion to dismiss the Indictment against him in a timely manner. (Mateus Br. 20-22). Watters filed the motion in question on February 8, 2016, nearly one year after the deadline to notify the Court of contemplated motions (Minute Entry for January 15, 2015), and eleven months after any such motions were required to have been filed (Dkt. #29). The motion to dismiss was premised on

21

allegations that: (i) CW-3 had drugged Mateus in order to coerce recorded statements during the course of the Government's investigation of the narcotics conspiracy; and (ii) CW-3 had provided perjurious testimony before the grand jury that indicted Mateus.  The Court denied the motion on February 10, 2016, concluding both that the motion to dismiss was untimely and that even if it were timely, it would be denied on the merits.  (Dkt. #77 at 28:24-29:23).

To demonstrate ineffective assistance of counsel with respect to the failure to make a motion, "the underlying motion must be shown to be meritorious, and there must be a reasonable probability that the verdict would have been different if the [motion had been granted]."  *United States* v. *Matos*, 905 F.2d 30, 32 (2d Cir. 1990); *see also Bruno* v. *Superintendent, Five Points Corr. Facility*, 639 F. App'x 683, 685 (2d Cir. 2016) (summary order) ("To satisfy the prejudice requirement of *Strickland*, [the defendant] must show, at a minimum, that he could have prevailed on a properly pursued [] motion."). While there can be no doubt that a motion to dismiss the Indictment, if granted, would have altered the outcome of the proceedings, Mateus has failed to establish that the underlying motion to dismiss would have been meritorious had it been filed in a timely manner.  The Court has already determined that the arguments presented in the motion to dismiss would not be granted on their merits.  (Dkt. #77 at 29:8-23).  Specifically, the Court found that issues relating to CW-3 were not "so pervasive and severe" to "impact[] or poison[] the Government's investigation [such] that the very, very severe sanction of dismissal of the indictment is warranted."  (*Id.* at 29:8-12).

In the briefing in support of his § 2255 motion, Mateus makes no new arguments as to why a timely motion to dismiss the Indictment would have succeeded. (Mateus Br. 20-22). In fact, Mateus presents only a few short sentences that might speak to the merits of the motion, in which Mateus states: (i) CW-3's conduct was so severe that he was reprimanded by the Government, and the Government determined that it would not use him as a trial witness; and (ii) CW-3's testimony before the grand jury was crucial to the Indictment. (*Id.*). But the Court, having reviewed the evidence and arguments presented in the motion to dismiss the Indictment, has already considered and rejected these arguments. Because a timely motion to dismiss the Indictment would not have been granted on the merits, Mateus has failed to establish that Watters's delay in bringing the motion constituted ineffective assistance of counsel.

## C.    No Evidentiary Hearing Is Warranted

Mateus requests that the Court hold an evidentiary hearing concerning his § 2255 motion, arguing that such a hearing is necessary to resolve factual discrepancies in the record. (*See generally* Mateus Reply). But an evidentiary hearing is neither necessary nor warranted. The Court has solicited and received the sworn testimony of Attorney Watters in the form of two affirmations. (Dkt. #116, 119, 124, 125). Where Watters's recollection of the history of this case has diverged from Mateus's — principally with regard to the timing of the Government's tendering and withdrawal of the Unofficial Plea Offer — the Court has viewed the evidence in the light most favorable to

Mateus and accepted his version of the facts. *See Puglisi*, 586 F.3d at 213 (holding that courts should view evidentiary proffers, where credible, in the light most favorable to the movant). In light of this, and having carefully reviewed Mateus's legal and factual assertions, the Court concludes that Mateus has failed to "set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez*, 722 F.3d at 131. Thus, Mateus's request for an evidentiary hearing concerning his § 2255 motion is denied.

## CONCLUSION

Mateus pleaded guilty pursuant to a Plea Agreement with the Government in which he waived his right to appeal or to collaterally challenge a term of imprisonment of 168 months or less. And while there was an exception to that waiver in the event that Mateus received the ineffective assistance of counsel, Mateus has failed to demonstrate any such ineffectiveness in connection with his plea or sentencing. Accordingly, Mateus's motion under 28 U.S.C. § 2255 is DENIED. Further, the Court will not issue a certificate of appealability, because Mateus has not made a substantial showing of a denial of a federal right and appellate review is not warranted. *See Hoffler* v. *Bezio*, 726 F.3d 144, 154 (2d Cir. 2013); *Tankleff* v. *Senkowski*, 135 F.3d 235, 241 (2d Cir. 1998).

The Clerk of Court is directed to file this Opinion and Order in this case, and in the underlying criminal case, *United States* v. *Mateus*, No. 14 Cr. 504-1

(KPF).  The Clerk of Court is further directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:          March 4, 2020
                New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*Sent by First Class Mail to:*
Eddie Mateus
Reg. No. 42599-054
FCI Otisville
P.O. Box. 1000
Otisville, NY 10963