UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v.-

EDDIE MATEUS,

Defendant.

---

14 Cr. 504-1 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

Defendant Eddie Mateus, who is currently incarcerated at the minimum security camp at FCI Otisville in New York ("Otisville"), has applied for compassionate release, in the form of a resentencing to time served, pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. #130). In brief, Mr. Mateus contends that he is at an increased risk of severe illness or worse because once (if not twice) in preceding five months, he contracted the COVID-19 virus. The Government opposes Mr. Mateus's motion. (Dkt. #133). As set forth in the remainder of this Order, the Court denies Mr. Mateus's motion for compassionate release.

## BACKGROUND

This Court has previously discussed Mr. Mateus's criminal conduct, *see Mateus* v. *United States*, No. 18 Civ. 638 (KPF), 2020 WL 1046624, at *2 (S.D.N.Y. Mar. 4, 2020), and therefore refers to it only as necessary to resolve the instant motion. On August 4, 2014, Mr. Mateus was arrested pursuant to a sealed indictment charging him with narcotics conspiracy, in violation of Title 21, United States Code, Section 846. (Dkt. #2-4). On May 31, 2016, after substantial pretrial motion practice, the Government filed a superseding indictment (the "S1 Indictment") that charged Mr. Mateus with conspiracy to

distribute, and to possess with the intent to distribute, five kilograms and more of mixtures and substances containing a detectable amount of cocaine, and one kilogram and more of mixtures and substances containing a detectable amount of heroin, thereby implicating the ten-year mandatory minimum term specified in Title 21, United States Code, Section 841(b)(1)(A).  (Dkt. #91).

On June 13, 2016, on the eve of his trial, Mr. Mateus entered a plea of guilty to Count One of the S1 Indictment.  (PSR ¶ 5; Dkt. #97 (plea transcript)).  The plea was entered pursuant to a written plea agreement with the Government in which, among other things, the parties stipulated that the applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") was 135 to 168 months' imprisonment, with a mandatory minimum term of 120 months' imprisonment.  Sentencing took place on January 4, 2017.  (Dkt. #112 (judgment); 113 (transcript ("Sent. Tr.")))).  During the proceedings, the Court determined that the correct Guidelines range was 121 to 135 months' imprisonment, and sentenced Mr. Mateus to the statutory minimum term of 120 months:

> What is interesting to me is that the parties again are similar on the generalities and very, very different on the details.  Right now I'm not sure that I know all of the details of this conspiracy or of Mr. Mateus's involvement in it and so it's difficult for me to have a complete picture of his role and what he's done.  However, for the purposes of this proceeding, more effectively for me the choices between 120 months and 121 months, I really don't need additional detail.  I don't need additional clarity.  I can accept what Mr. Mateus has said to me. I can accept what the government has said to me and make my decision accordingly.

> I might take issue slightly with Mr. Mateus' comments that he has accepted responsibility. I know he has told me it. I'd started to count how many times he told me he was accepting responsibility fully in the course of his statements to me and in the course of his written submission. But there is at the same time a certain habit he has of blaming someone for what has happened. I've heard a lot about how Mr. Lizardo was involved and how Mr. Lizardo is on some level to blame for Mr. Mateus' involvement in this case. I don't know that to be the case. I don't need to know and therefore, I stopped Mr. Mateus with his discussions of the government and its plea negotiations with him. It's not my concern. The offer was the offer he took. I am not going to have him renegotiate it in my presence.

(Sent. Tr. 37-38).

In contravention of his plea agreement with the Government, Mr. Mateus filed a motion to vacate, set aside, or correct his sentence in January 2018. (Dkt. #115). After extensive briefing and development of the record, the Court denied the motion by Opinion and Order dated March 4, 2020. (Dkt. #128). Three months later, on June 30, 2020, new counsel entered a notice of appearance on Mr. Mateus's behalf and filed the instant motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. #129-130). Initially, Mr. Mateus argued that he "has full-blown symptomatic COVID-19, and he is particularly vulnerable to complications" as a result of pre-existing lung ailments. (Dkt. #130 at 2; *see also* Dkt. #132 (supplemental defense submission); *but see* Final Presentence Investigation Report ("PSR") ¶ 48 (summarizing Mr. Mateus's statement to the Probation Office that he was "in good health and not presently under a physician's care")). Mr. Mateus also expressed concerns about his incarceration at Otisville's Secure Housing Unit

(or "SHU"). (*Id.* at 2, 11-16). The Government filed an opposition letter brief on July 10, 2020 — noting, among other things, that "the defendant experienced a mild or asymptomatic case of COVID-19, and he since appears to have fully recovered." (Dkt. #133 at 5). Mr. Mateus then filed his reply on July 17, 2020, stating that his recovery was neither rapid nor without symptoms, and that the Government had "undercount[ed]" his post-sentencing rehabilitation. (Dkt. #134 at 2). The Court has also had the opportunity to review Mr. Mateus's medical records, which were produced in response to a request of the Bureau of Prisons (the "BOP").

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the BOP, or upon motion of the defendant. A defendant may move under § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under § 3582(c)(1)(A), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In making this determination, the

4

court must consider the "the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable." *Id.* § 3582(c)(1)(A). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

Congress has delegated responsibility to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). The Sentencing Commission has determined that a defendant's circumstances meet this standard, *inter alia*, when the defendant is "suffering from a terminal illness" or a "serious physical or medical condition ... that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," or if, in the judgment of the BOP, the defendant's circumstances are extraordinary and compelling for "other reasons." U.S.S.G. § 1B1.13(1)(A) & Application Note 1(A), (D). Following the passage of the First Step Act, courts may independently determine whether such "other reasons" are present in a given case, without deference to the determination made by the BOP. *See United States* v. *Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020). In addition, the Sentencing Commission counsels that a court should reduce a defendant's sentence only after determining that "[t]he defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

## DISCUSSION

Mr. Mateus's motion is properly before the Court because more than 30 days have passed since he submitted his request to BOP on April 14, 2020. (Dkt. #130 at 9).  The issue at hand is whether Mr. Mateus has identified "extraordinary and compelling reasons" warranting his release.  The Court finds that he has not.

To be sure, Mr. Mateus's motion differs from many the Court has received, because rather than arguing a higher risk of contracting the COVID-19 virus, Mr. Mateus has already contracted and recovered from it.  The Court recognizes, as do the parties, that sister courts in this District have granted, and denied, compassionate release motions based on the existence of the COVID-19 pandemic and the risks of its transmission at prisons.  (*See, e.g.*, Dkt. #130 at 15-16, Dkt. #132 at 1-4 (defense listings of cases granting compassionate release to inmates); Dkt. #133 at 5-7 (Government distinguishing of cases cited by Mr. Mateus)).  This Court continues to align itself with those courts that have found "that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or *serious underlying health conditions* that place a defendant at greater risk of negative complications from the disease."  *United States* v. *Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (emphasis added) (collecting cases); *see also United States* v. *Brady*, No. 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) ("Instead, compassionate release motions amid the

COVID-19 pandemic have required a 'fact-intensive' inquiry, made in the 'unique circumstances' and 'context' of each individual defendant. In practice, courts in this district have considered the age of the prisoner; the severity and documented history of the defendant's health conditions, as well as the defendant's history of managing those conditions in prison; the proliferation and status of infections in the prison facility; the proportion of the term of incarceration that has been served by the prisoner; and the sentencing factors in 18 U.S.C. § 3553(a), with particular emphasis on the seriousness of the offense, the deterrent effect of the punishment, and the need to protect the public." (internal citations omitted)).[1]

Mr. Mateus has not demonstrated extraordinary and compelling circumstances in this case. Put simply, Mr. Mateus has already contracted the COVID-19 virus and recovered from it. Other courts have denied compassionate release requests on this basis, and the Court is persuaded by their analyses. *See, e.g.*, *United States* v. *Perez*, No. 04 Cr. 937-1 (NRB), 2020 WL 4677586, at *1 (S.D.N.Y. Aug. 11, 2020) ("While it is unfortunate that defendant suffered from COVID-19 while in custody, contraction of a disease generally does not constitute an extraordinary and compelling basis for release. The fact that defendant recovered from COVID-19 further supports this

---

[1] Mr. Mateus notes that the Court granted compassionate relief requests for individuals convicted of comparable or worse conduct. (Dkt. #130 at 2 (citing *United States* v. *Gentille*, No. 19 Cr. 590 (KPF), 2020 WL 1814158, at *1 (S.D.N.Y. Apr. 9, 2020)); Dkt. #134 at 2-3 (citing *Gentille* and *United States* v. *Amaro*, No. 16 Cr. 848 (KPF), 2020 WL 3975486, at *1 (S.D.N.Y. July 14, 2020))). Those cases are inapposite for several reasons, including the fact that each of those defendants was within a month of release to supervised release or a halfway house.

conclusion."); *United States* v. *Malecki*, No. 17 Cr. 18S, 2020 WL 4013050, at *5 (W.D.N.Y. July 16, 2020) ("Malecki, however, has already had COVID-19, suffered no ill effects, and is recovered.  The risks and dangers associated with COVID-19 are therefore not grounds for relief." (collecting cases)).  And while Mr. Mateus proffers several medical and mental health conditions and personal habits that, he claims, compel his release even now, the Court disagrees.  The Court has reviewed closely Mr. Mateus's medical records, which substantiate the Government's argument that "[Mr.] Mateus is not presently experiencing any substantial impairment or risk to his health, nor is there reason to believe these circumstances will change in the future in a manner that creates extraordinary and compelling reasons for his release." (Dkt. #133 at 5).  More to the point, Mr. Mateus has not suggested that his medical care has been hampered by the pandemic, and the Court's review discloses that Mr. Mateus has received appropriate care during his incarceration.  (*See* Dkt. #134 at 5 (acknowledging prompt response of medical staff to recent mental health episode)).  Finally, the Court notes that the most recent information from the BOP discloses only one Otisville staff member, and no inmates, who currently test positive for COVID-19.  https://www.bop.gov/coronavirus/ (last accessed August 27, 2020).

Separately, while the Court is pleased to hear of Mr. Mateus's efforts towards rehabilitation, such efforts do not suffice, alone or in combination with his other issues, to warrant the extraordinary relief he now seeks.  *See* U.S.S.G. § 1B1.13, n.3 ("rehabilitation of the defendant is not, by itself, an

extraordinary and compelling reason"); *see generally United States* v. *Morrison*, No. 16 Cr. 551-1 (KPF), 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020); *United States* v. *Lisi*, No. 15 Cr. 457 (KPF), 2020 WL 881994, at *4 (S.D.N.Y. Feb. 24, 2020).

Finally, the factors set forth in 18 U.S.C. § 3553(a) counsel against granting Mr. Mateus's motion. Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C). Despite a prior federal prosecution for cocaine trafficking, and a consequent 63-month term of imprisonment (PSR ¶¶ 29-32), Mr. Mateus progressed to cocaine and heroin trafficking in kilogram quantities in 2011, and did so for at least a year (*id.* at ¶¶ 10-13). And as hinted at in his plea and sentencing submissions, and as made clear in his Section 2255 motion, Mr. Mateus still has not fully accepted responsibility for his conduct. The Court varied downwardly to sentence Mr. Mateus at the statutory mandatory minimum; it intended then, and intends now, for him to serve the totality of that sentence. Thus, the Court finds that the § 3553(a) factors weigh against granting Mr. Mateus's motion.[2]

---

[2] To the extent not already pursued, Mr. Mateus may pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP. The decision to grant that relief, however, is reserved to the discretion of the BOP.

## CONCLUSION

For the foregoing reasons, Defendant Mr. Mateus's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED.  The Clerk of Court is directed to terminate the motion at docket entry 130.

    SO ORDERED.

Dated:  August 28, 2020
         New York, New York

                                            KATHERINE POLK FAILLA
                                            United States District Judge